**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Dawn N. Quiroz,<br><br>  Plaintiff,<br><br>v.<br><br>Commissioner of Social Security Administration,<br><br>  Defendant. | No. CV-16-02728-PHX-DLR<br><br>**ORDER** |

Plaintiff applied for disability insurance benefits in October 2011, claiming disability since March 3, 2011. (A.R. 17.) The claim was denied initially on June 14, 2012, and upon reconsideration on January 14, 2013. (*Id*.) Plaintiff then requested a hearing. (*Id.*) On September 25, 2014, Plaintiff and a vocational expert (VE) testified at a hearing before an Administrative Law Judge (ALJ). (*Id.* at 42-65.) The ALJ issued a written decision three months later, finding Plaintiff not disabled within the meaning of the Social Security Act. (*Id.* at 17-33.) This became Defendant's final decision when the Appeals Council denied review. (*Id.* at 1-3.)

Plaintiff then commenced this action for judicial review pursuant to 42 U.S.C. § 405(g). (Doc. 1.) After receipt of the administrative record (Doc. 14), the parties fully briefed the issues for review (Docs. 15-17). For reasons stated below, the Court finds that Defendant's decision must be reversed and the case remanded for an award of

benefits.

## STANDARD OF REVIEW

It is not the district court's role to review the ALJ's decision de novo or otherwise determine whether the claimant is disabled. Rather, the court is limited to reviewing the ALJ's decision to determine whether it "contains legal error or is not supported by substantial evidence." *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007). Substantial evidence is more than a scintilla but less than a preponderance, and "such relevant evidence that a reasonable mind might accept as adequate to support a conclusion." *Id.* "Where evidence is susceptible to more than one rational interpretation, the ALJ's decision should be upheld." *Id.* The court, however, "must consider the entire record as a whole and may not affirm simply by isolating a 'specific quantum of supporting evidence.'" *Id.* Nor may the court "affirm the ALJ on a ground upon which he did not rely." *Id.*

In determining whether the ALJ committed legal error, the district court is bound to apply the legal standards imposed by the law of this Circuit. This includes the requirement that, absent evidence of malingering, "the ALJ can reject the claimant's testimony about the severity of her symptoms only by offering specific, clear and convincing reasons for doing so." *Smolen v. Chater*, 80 F.3d 1273, 1281 (9th Cir. 1996). Similarly, unless contradicted by another physician, if "the ALJ wishes to disregard the opinion of the treating physician, he or she must make findings setting forth specific, legitimate reasons for doing so that are based on substantial evidence in the record." *Murray v. Heckler*, 722 F.2d 499, 502 (9th Cir. 1983).

## DISCUSSION

To determine whether a claimant is disabled for purposes of the Social Security Act, the ALJ follows a five-step process. 20 C.F.R. § 404.1520(a). At the first step, the ALJ determines whether the claimant is engaging in substantial gainful activity. 20 C.F.R. § 404.1520(a)(4)(i). If so, the claimant is not disabled and the inquiry ends. *Id.* At step two, the ALJ determines whether the claimant has a "severe" medically

determinable physical or mental impairment. § 404.1520(a)(4)(ii). If not, the claimant is not disabled and the inquiry ends. *Id.* At step three, the ALJ considers whether the claimant's impairment or combination of impairments meets or medically equals an impairment listed in Appendix 1 to Subpart P of 20 C.F.R. Pt. 404. § 404.1520(a)(4)(iii). If so, the claimant is automatically found to be disabled. *Id.* If not, the ALJ proceeds to step four. At step four, the ALJ assesses the claimant's residual functional capacity (RFC) and determines whether the claimant is still capable of performing past relevant work. § 404.1520(a)(4)(iv). If so, the claimant is not disabled and the inquiry ends. *Id.* If not, the ALJ proceeds to the fifth and final step, where he determines whether the claimant can perform any other work based on the claimant's RFC, age, education, and work experience. § 404.1520(a)(4)(v). If so, the claimant is not disabled. *Id.* If not, the claimant is disabled. *Id.*

At step one, the ALJ found that Plaintiff meets the insured status requirements of the Social Security Act through December 31, 2016, and that she has not engaged in substantial gainful activity since March 3, 2011. (A.R. 19.) At step two, the ALJ found that Plaintiff has the following severe impairments: myalgia, degenerative disc disease of the lumbar spine with mild dextroscoliosis, obesity, depressive disorder, and history of bilateral carpal tunnel syndrome and asthma. (*Id.*) At step three, the ALJ determined that Plaintiff's impairments do not meet or equal the severity of one of the listed impairments in Appendix 1 to Subpart P of 20 C.F.R. Pt. 404. (*Id.* at 22-23.) At step four, the ALJ found that Plaintiff:

> has the [RFC] to perform light work … except [she] can stand [and] walk six hours in an eight-hour day; [she] can sit six hours in an eight-hour day; [she] should never climb ropes, ladders, or scaffolds, [she] can occasionally climb ramps and stairs, kneel, crouch, and crawl; [she] cannot perform repetitious keyboarding or use of hand tools requiring torqueing; [she] must avoid concentrated exposure to fumes, odors, dust, gases, and unprotected heights; and [she] can understand, remember, and carry out at least simple instructions and non-detailed tasks.

(*Id.* at 23-24.) The ALJ also found that Plaintiff is unable to perform any of her past

1 relevant work. (*Id.* at 31.) At step five, however, after considering Plaintiff's age, education, work experience, and RFC, the ALJ concluded that there are jobs that exist in significant numbers in the national economy that Plaintiff can perform. (*Id.* at 32.)

On appeal, Plaintiff challenges the RFC and step five determinations, arguing that the ALJ improperly weighed medical opinions and erred in rejecting her symptom testimony. Defendant counters that the ALJ properly resolved conflicts in the medical opinions based on substantial evidence, and provided sufficient reasons for finding Plaintiff not credible. The parties disagree as to whether any remand should be for an award of benefits or further proceedings.

The Court agrees with Plaintiff that the ALJ erred in discrediting her testimony and improperly weighing the medical opinions. Because this legal error was not harmless, the ALJ's decision must be reversed and remanded for an award of benefits.

**I. The ALJ Erred in Evaluating Plaintiff's Credibility**

Plaintiff provided written reports and testified at the hearing about her pain, fatigue, and other symptoms caused by her impairments and how they severely limit her daily activities. (*Id.* at 49-60, 186-207, 229-36, 239-50.) The ALJ found the testimony regarding the intensity, persistence, and limiting effects of the symptoms not entirely credible. (*Id.* at 25.) This adverse credibility finding is legally erroneous and not supported by substantial evidence.

In evaluating the credibility of a claimant's testimony regarding subjective pain or other symptoms, the ALJ must engage in a two-step analysis. First, the ALJ determines whether the claimant presented objective medical evidence of an impairment that reasonably could be expected to produce some degree of the symptoms alleged. Second, if the claimant makes this showing and there is no evidence of malingering, "the ALJ can reject the claimant's testimony about the severity of her symptoms only by offering specific, clear and convincing reasons for doing so." *Smolen*, 80 F.3d at 1281.

Here, the ALJ expressly found that Plaintiff's medically determinable impairments could reasonably be expected to cause the alleged symptoms. (A.R. 25.) Because the

ALJ made no finding of malingering, he was required to give clear and convincing reasons for his adverse credibility finding. "This is not an easy requirement to meet: The clear and convincing standard is the most demanding required in Social Security cases." *Garrison v. Colvin*, 759 F.3d 995, 1015 (9th Cir. 2014) (quotation and citation omitted); *see also Smolen*, 80 F.3d at 1284 ("The ALJ must state specifically which symptom testimony is not credible and what facts in the record lead to that conclusion."). The reasons provided by the ALJ are neither convincing nor supported by substantial evidence.

The ALJ found, "[o]verall, the claimant's allegations regarding the severity of her physical symptoms and limitations are not supported by the record." (A.R. 27.) To the extent that this statement was intended to be a reason for discrediting Plaintiff's symptom testimony, rather than a summary of the ALJ's conclusion, it is inadequate. Though a plaintiff who alleges disability based on subjective symptoms, like pain or fatigue, "must produce objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged," she "need not produce objective medical evidence of the pain or fatigue itself, or the severity thereof." *Smolen*, 80 F.3d at 1281-82 (internal quotation and citation omitted). Stated differently, the ALJ "may not reject subjective symptom testimony . . . simply because there is no showing that the impairment can reasonably produce the *degree* of symptom alleged."[1] *Id.*

The ALJ's other stated reasons for discrediting Plaintiff's symptom testimony include: (1) physical examinations never showed Plaintiff in acute distress; (2) results of Plaintiff's physical examinations differed amongst providers; (3) Plaintiff responded favorably to treatment; (4) Plaintiff failed to comply with prescribed treatments; and (5) Plaintiff's alleged daily activities were inconsistent. (A.R. 27-28.) The Court addresses each in turn.

---

[1] Defendant cites *Rollins v. Massinari*, 261 F.3d 853, 857 (9th Cir. 2001), for the proposition that the ALJ may consider lack of medical evidence so long as it is not the sole basis for discounting the claimant's testimony. (Doc. 16 at 10.) As further explained, however, the other reasons the ALJ gave are neither convincing nor supported by substantial evidence.

## A. Lack of Evidence of Acute Distress in Physical Examinations

The ALJ first claimed that "[p]hysical examinations show that the claimant was never in any acute distress, even when experiencing a fibromyalgia flare-up." (*Id.* at 27.) The ALJ failed, however, to highlight any part of Plaintiff's testimony that is discredited or contradicted by the lack of acute distress in the medical records. It is certainly possible, and courts have found, that a person can suffer disabling chronic pain that never manifests as acute. *See Dorsett v. Colvin*, No. 16-cv-1101-PHX-DGC, 2017 WL 840694, at \*17 (D. Ariz. March 3, 2017); *Petty v. Astrue*, 550 F. Supp. 2d 1089, 1099 (D. Ariz. 2008) (observing that "a condition can be stable but disabling"). Absent a more thorough explanation, the lack of evidence of acute distress is not a clear and convincing reason for discounting the credibility of the Plaintiff's symptom testimony. *See Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 884 (9th Cir. 2006) ("[E]ven if the ALJ had given facially legitimate reasons for his partial adverse credibility finding, the complete lack of meaningful explanation gives this court nothing with which to assess its legitimacy.").

This reason is also not supported by substantial evidence. The record is filled with reports of Plaintiff's acute distress. (*See, e.g.*, *id.* at 331, 342, 355, 365, 389, 1229, 1239, 1246 (describing pain as "burning," "throbbing," "severe," "very painful," and a "10/10").)[2] In short, an examination of the entire record "shows that the ALJ has erred in characterizing statements and documents contained therein to reach the conclusion that [Plaintiff] exaggerated her symptoms." *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998); *see Orn*, 495 F.3d at 639.

## B. Variance in Physical Examinations

The ALJ next referenced discrepancies in the results of Plaintiff's physical examinations, noting that "[m]ost providers . . . vary regarding the claimant's gait, straight leg raise testing, and sensation." (A.R. 27.) Specifically, "emergency room notes, notes from the claimant's urologist, and notes from [Plaintiff's] primary care

---

[2] Fibromyalgia is a disease that generally eludes objective evidence, and in order to diagnose it doctors must rely heavily on subjective testimony. *Benecke v. Barnhart*, 379 F.3d 587, 590, 594 (9th Cir. 2004).

provider show that the claimant had a normal gait." (*Id.*) Based on the variations, the ALJ opines, "[o]ne would think that if her problems were as severe and limiting as she alleges, then they would be readily observed and noted by all of her treating providers." (*Id.*)

Variations in Plaintiff's examinations are not a clear and convincing reason for rejecting Plaintiff's subjective symptom testimony. Plaintiff suffered from, among other conditions, fibromyalgia,[3] "a rheumatic disease that causes inflammation of the fibrous connective tissue components of muscles, tendons, ligaments, and other tissue." *Benecke v. Barnhart*, 379 F.3d 587, 589 (9th Cir. 2004). Common symptoms include chronic pain throughout the body, multiple tender, points, fatigue, and stiffness. *Id.* Fibromyalgia patients, however, manifest normal muscle strength and neurological reactions and have a full range of motion. *See, e.g.*, *Preston v. Sec. of Health and Human Servs.*, 854 F.2d 815, 820 (6th Cir. 1988); *Kline v. Colvin*, 140 F. Supp. 3d 912, 921 (D. Ariz. 2015). Moreover, the nature of fibromyalgia is such that people suffering from the condition often experience "flares" or "flare-ups," where the symptoms temporarily increase in number and intensity. Ann Vincent, et al., *Fibromyalgia Flares: A Qualitative Analysis*, 17 Pain Medicine 2016, 463-68 (Those with fibromyalgia, "undergo periods of exacerbation or worsening, often colloquially referred to as "flares" by patients and their health care providers"). This change in the severity of Plaintiff's pain and stiffness is consistent with fluctuations in her treating providers' observations. Given Plaintiff's fibromyalgia, the results of her physical examinations are not inconsistent with her condition.

### C. Favorable Responses to Treatment

The ALJ discredited Plaintiff's symptom testimony because "claimant has reported pain relief with treatment." (A.R. 27.) "Impairments that can be controlled

---

[3] Plaintiff was diagnosed with fibromyalgia by Dr. Silverman. (A.R. at 411, 1455.) At step two, the ALJ did not find Plaintiff's fibromyalgia to be severe. However, "[i]n determining a claimant's residual functional capacity, the ALJ must consider all of a claimant's determinable impairments, including those that are not severe." *Ghanim v. Colvin*, 763 F.3d 1154, 1166 (9th Cir. 2014).

effectively with medication are not disabling for the purpose of determining eligibility for SSI benefits." *Warre v. Comm'r*, 439 F.3d 1001, 1006 (9th Cir. 2006). Occasional and sporadic symptom-free periods, however, are not inconsistent with disability. *Reddick*, 157 F.3d at 724. In making their determinations, ALJs "must review the whole record; they cannot cherry-pick evidence to support their findings." *Bostwick v. Colvin*, No. 13-cv-1936-LAB, 2015 WL 12532350, at *2 (S.D. Cal. Mar. 30, 2015); *see Garrison*, 759 F.3d at 1017 & n.23 ("The ALJ was not permitted to 'cherry-pick' from those mixed results to support a denial of benefits."). Here, in finding Plaintiff had favorable responses in treatment, the ALJ cherry-picked favorable evidence from a lengthy medical record filled with contrary evidence.

The ALJ cited to five records to support his conclusion: (1) treatment records from Dr. Gary Silverman; (2) outpatient hospital records from Phoenix Indian Medical Center; (3) treatment records from Comprehensive Pain Management; (4) psychology evaluation by Dr. Brent Geary; and (5) treatment records from Fiel Family & Sports Medicine. (A.R. 29-30.) From these records, the ALJ highlighted select portions: August 2011, Plaintiff requested and found helpful a Lidoderm Patch (*Id.* at 327); December 2011, Plaintiff reported pain relief with her medication (*Id.* at 337); February 2012, Plaintiff again reported pain relief after joint injection (*Id.* at 1255); January 2013, Plaintiff reported only experiencing pain 50% of the time (*Id.*); and, at times, Dr. Silverman described Plaintiff's fibromyalgia as "stable" (*Id.* at 27-28).

Dr. Silverman's notes overwhelmingly show, however, that any relief Plaintiff experienced from treatment was temporary. (*See, e.g.*, *id.* at 1254-55 (noting that Plaintiff still has similar levels of pain, despite believing Nucytna prescription is helping), 1247 (reporting injection from prior visit provided "significant relief," but Plaintiff has had 10 flare-ups since that visit and is not doing well today), 331-37 (February 2012 assessment with a pain score ranging from 7 to 10 while on medication, 10 representing a person's highest pain level), 1043-48 (July 2012 assessment in which symptoms worsened and Plaintiff reported it "hurts all over" while still on medication).)

The same is true for Plaintiff's other providers. For instance, although the ALJ notes that Plaintiff's records from Phoenix Indian Medical Center describe Plaintiff as "stable," those same records also indicate that Plaintiff was "having a flare of fibromyalgia" once a day and increased symptoms with pain at nine out of ten. (*Id.* at 511, 531.) Plaintiff's records from Comprehensive Pain Management show that in February 2012 she received relief from an injection, yet by her next appointment in April 2012 she reported constant pain and multiple flare ups. (*Id.* at 482, 1053.) Plaintiff told a consultative psychologist that she her medications provided her increased energy in June 2012, yet as early as July 2012 she was reporting that the same medicine caused her severe nausea and her symptoms had "gotten worse." (*Id.* at 675-81, 1043.)

Through a selective reading of the notes, the ALJ concluded Plaintiff improved while on medication. The ALJ erred by cherry-picking select instances of improvement over a period of several years rather than considering the medical record as a whole. *See Garrison*, 759 F.3d at 1017 (finding that ALJ erred for rejecting claimant's testimony merely because symptoms fluctuated in the course of treatment).

### D. Compliance with Recommended Treatment

The ALJ next found that "the claimant has also had questionable compliance with recommended treatment." (A.R. 28.) "An individual's statements may be less credible if . . . the medical reports or records show that the individual is not following the treatment as prescribed *and there are no good reasons for this failure*." SSR 96-7p, 1996 WL 374186, at *7 (July 2, 1996) (emphasis added). The ALJ called attention to three instances of apparent noncompliance: (1) request by a pain specialist that Plaintiff be more compliant; (2) Plaintiff's inconsistent statement as to whether she filled her prescription for pain medication; and (3) Plaintiff failing to participate in aquatic and physical therapy per the recommendation of her pain specialist. (A.R. 27-28.) The ALJ failed, however, to ask Plaintiff why she was noncompliant. (*Id.* at 42-65.) The ALJ has an independent "duty to fully and fairly develop the record and to assure that the claimant's interests are considered." *Smolen*, 80 F.3d at 1288. Here, by not asking

Plaintiff about the isolated instances of noncompliance with recommended treatment, the ALJ failed to fully and fairly develop the record. (A.R. 42-65.) Further, without such information, the ALJ necessarily could not determine whether any "good reasons" existed for Plaintiff's noncompliance.[4]

### E. Daily Activities

The ALJ found that "the claimant has admitted that she is able to do more than she alleges." (*Id.* at 28.) ALJs may consider daily activities as a basis for adverse credibility determinations. Ordinarily, this can be done in two ways—the plaintiff's activities either meet the threshold for transferable work skills or contradict her other testimony. *See Orn*, 495 F.3d at 639. Here, the ALJ did not conclude Plaintiff's daily activities are transferable to the workplace. Instead, the ALJ concluded that Plaintiff must be "able to do more than she alleges" because her reported difficulty with daily activities varied between 2011 and 2014. (A.R. 28.) For example, throughout 2011 and the first half of 2012, Plaintiff told her rheumatologist that she was able to get in and out of bed and her car, lift a full glass to her mouth, walk on flat ground, and turn taps on and off without difficulty. (*Id.*) In October of 2012, however, Plaintiff reported that she had some difficulty performing many of these same tasks. (*Id.*) Then, in 2014, Plaintiff stated that she busied herself at home doing chores, like washing dishes. (*Id.*)

The ALJ's reason is not clear, as it fails to expound whether the ALJ discredited Plaintiff's credibility because her hearing testimony contradicted her prior reports to medical providers as to her daily activities, or because Plaintiff's ability to do certain tasks at different points throughout her disability varied.

The reason is also not supported by substantial evidence. The ALJ offered no examples where Plaintiff's testimony contradicted what she had reported to her medical providers. Nor did the ALJ offer examples where Plaintiff reported different daily

---

[4] Notably, the medical records suggest there might have been a good reason for some of Plaintiff's apparent noncompliance. Namely, Plaintiff's medications caused severe nausea. (*Id.* at 348, 360, 363, 636, 768, 1043, 1053); *see also* SSR 96-7p at *7 (noting that side effects from medication may provide a good reason for not taking them).

activities to her treatment providers at or near the same time period. To the contrary, Plaintiff's testimony regarding her daily activities in 2014 was consistent with what she had told other providers that year. (*See e.g.*, *id.* at 54, 1509 (reported to doctor that she did dishes at home, testified that "I try to do the dishes. I'll get in there and do a couple and I'll start feeling ill and then I'll either go sit down or I'll go lay down.").)

The record shows that the limitations Plaintiff's condition placed on her daily activities fluctuated throughout her disability. These marginal fluctuations, however, are not substantial evidence. As noted above, Plaintiff suffered from, among other conditions, fibromyalgia. Because the level of pain for people with the condition fluctuates during "flare-ups," corresponding changes in Plaintiff's ability to conduct certain daily activities is not inconsistent with the nature of her ailment. For the aforementioned reasons, the ALJ failed to provide clear and convincing reasons supported by substantial evidence for finding Plaintiff's testimony less credible.

## II. The ALJ Erred in Weighing Medical Source Evidence

Plaintiff next contends that the ALJ improperly discounted the opinion of Dr. Silverman, her treating physician. (Doc. 15 at 9.) In weighing medical source opinions, the Ninth Circuit distinguishes among three types of physicians: (1) treating physicians, who actually treat the claimant; (2) examining physicians, who examine but do not treat the claimant; and (3) non-examining physicians, who neither treat nor examine the claimant. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995). Generally, more weight should be given to the opinion of a treating physician than to the opinions of non-treating physicians. *Id.* However, a treating physician's opinion is entitled to controlling weight only if the opinion is well-supported by medically acceptable diagnostic techniques and is not inconsistent with other substantial evidence in the case record. 20 C.F.R. §§ 404.1527(d)(2), 416.927(c)(2). Where a treating physician's opinion is contradicted, it may not be rejected without "specific and legitimate reasons" supported by substantial evidence in the record. *Lester*, 81 F.3d at 830.

Dr. Silverman opined that Plaintiff could "carry less than ten pounds

occasionally," "stand and/or walk for less than two hours in an eight-hour workday," "sit for less than six hours in an eight-hour workday," and "must alternate between sitting and standing every 15-30 minutes." (A.R. 1455-60.) Dr. Silverman's opinion was contradicted by State agency medical consultants, who determined based on the medical record that Plaintiff could both "stand and/or walk" and "sit" for more than six hours a day on a sustained basis. (*Id.* at 67-79, 81-107.)

The ALJ discounted Dr. Silverman's opinions because they were based on Plaintiff's subjective reports as opposed to objective findings, and were inconsistent with Plaintiff's reported daily activities. (*Id.* at 30.) These reasons are neither legitimate nor supported by substantial evidence in the record.

In support of the first reason, the ALJ identified three of Dr. Silverman's treatment notes that he believed conflicted with Dr. Silverman's final opinions: (1) claimant was never in acute distress; (2) claimant did not have sufficient tender points; and (3) claimant had normal gait, stance, and motor strength. (*Id.*) As discussed at length above, without an explanation from the ALJ as to why a lack of acute distress prevents a physician from finding that a person with chronic pain is disabled, the lack of acute distress is not a specific and legitimate reason. *See Robbins*, 466 F.3d at 884. Moreover, as previously explained, the record is filled with evidence that Plaintiff was in acute distress. The ALJ's finding mischaracterizes the record and is not supported by substantial evidence.

The ALJ also erred in finding that the absence of sufficient tender points provides a legitimate reason for discrediting Dr. Silverman's opinions. Although tender point examinations are relevant in diagnosing fibromyalgia, the diagnostic criteria set out by the American College of Rheumatology do not require a minimum number of tender points for a diagnosis of the disease. *Rounds v. Comm'r Soc. Sec. Admin.*, 807 F.3d 996, 1005 n.10 (9th Cir. 2015).[5] Tender points are not, however, used as a metric for determining the severity of the symptoms of the disease, and therefore are an insufficient

---

[5] The 2010 diagnostic criteria were published in Frederick Wolfe, et al., The American College of Rheumatology Preliminary Diagnostic Criteria for Fibromyalgia and Measurement of Symptom Severity, 62 Arthritis Care & Research 600 (May 2010).

basis for discrediting Dr. Silverman's opinion.

The ALJ also asserted that Dr. Silverman's treatment notes show that Plaintiff had "a normal gait and stance, had muscle tone and bulk, and had normal motor strength." (A.R. 30.) The Social Security Ruling regarding evaluations of fibromyalgia, however, makes no mention of a person's gait, stance, muscle tone, muscle bulk, or motor strength. SSR 12-2P, 2012 WL 3104869 (July 25, 2012). This should come as no surprise considering that "fibromyalgia patients manifest normal muscle strength and neurological reactions and have a full range of motion." *Preston*, 854 F.2d at 820; *See also Kline*, 140 F. Supp. 3d at 921.

As a secondary rationale for discounting Dr. Silverman's opinion, the ALJ found that "the opinions are inconsistent with the claimant's reports regarding her activities." (A.R. 30.) In support, the ALJ cited to medical records spanning from late 2010 to September of 2014, various points in which Plaintiff reported being able dress herself, prepare meals, and do chores. (*Id.*) Notably, the ALJ fails to point to any specific records evidencing Plaintiff engaging in daily activities that contradict the limitations opined by Dr. Silverman. Without evidence of daily activities that contradict with the opinion rendered, the ALJ's reason lacks the requisite specificity. *See Zavalin v. Colvin*, 778 F.3d 842, 848 (9th Cir. 2015) (rejecting ALJ reliance on the claimant's activities where there was no indication of the extent, manner, or complexity of those activities.)

Because the reasons offered by the ALJ are not specific and legitimate, nor supported by substantial evidence, the ALJ erred in giving only "little weight" to Dr. Silverman's opinions.

## **SCOPE OF REMAND**

Having decided to reverse Defendant's decision, the Court has discretion to remand the case for further development of the record, or to credit the improperly rejected evidence as true and remand for an award benefits. *See Reddick*, 157 F.3d at 728. In deciding whether to remand for an award of benefits, the Court considers the following three factors: (1) did the ALJ fail to provide legally sufficient reasons for

rejecting evidence, (2) has the record has been fully developed and would further proceedings serve no useful purpose, and (3) is it clear from the record that the ALJ would be required to find the claimant disabled were such evidence credited? *Triechler v. Comm'r of Soc. Sec.*, 775 F.3d 1090, 1100-01 (9th Cir. 2014). All three conditions of the credit-as-true-rule are met here.

First, as explained above, the ALJ failed to provide legally sufficient reasons for rejecting Plaintiff's symptom testimony and for discounting the opinions of Plaintiff's treating rheumatologist. Second, the Court finds no outstanding issues of fact to be resolved through further proceedings. Although the ALJ failed to investigate whether there was a valid explanation for Plaintiff's noncompliance with recommended treatment, even if the ALJ were to determine on remand that no "good reason" existed, in light of the rest of the record, this alone would be insufficient to constitute substantial evidence. The ALJ also failed to adequately explain why the lack of acute distress or the variance in miscellaneous physical tests served as evidence that discredited Plaintiff's testimony. But remand for the purpose of allowing the ALJ to have a do-over in showing Plaintiff is not credible is inappropriate. *See Benecke*, 379 F.3d at 595 ("Allowing the Commissioner to decide the issue again would create an unfair 'heads we win; tails, let's play again' system of disability benefits adjudication."); *Moisa v. Barnhart*, 367 F.3d 882, 887 (9th Cir. 2004) ("The Commissioner, having lost this appeal, should not have another opportunity to show that Moisa is not credible any more than Moisa, had he lost, should have an opportunity for remand and further proceedings to establish his credibility.").

Finally, if the symptom testimony and treating physician opinions were credited as true, the ALJ would be required to find Plaintiff disabled. At the administrative hearing, the VE testified that, based on Dr. Silverman's opinions, Plaintiff would not be able to retain employment. (A.R. 63-64.) Accordingly, the Court exercises its discretion to remand for an award of benefits.

**IT IS ORDERED** that the final decision of the Commissioner of Social Security

is **REVERSED** and the case **REMANDED** for an award of benefits. The Clerk shall enter judgment accordingly and terminate the case.

Dated this 25th day of September, 2017.

Douglas L. Rayes
United States District Judge